# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| United States of America,<br><br>Plaintiff<br><br>v.<br><br>Charles Edward Cooper Jr.,<br><br>Defendant | Case No.: 2:14-cr-228-JAD-CWH<br><br>**Order Denying Appeal of Magistrate Judge's Detention Order [Docs. 22, 24]** |

Charles Edward Cooper Jr. Was indicted on one count of being a felon in possession of a firearm after officers responding to a domestic-violence call allegedly found him with a 12-gauge shotgun and two handguns.[1] Magistrate Judge Nancy Koppe found that Cooper poses "a substantial risk of danger to the community" based on his criminal history, which dates to 1983, and based on his "recent brutal attack" on his fiancee, Michelle Basolo, and she ordered him detained.[2] Cooper appeals Magistrate Judge Koppe's detention order based in large part on a new affidavit from Basolo, which offers a newly revised recount of the events leading to the domestic-violence report:

---

[1] Doc. 1 at 2 (indictment); Doc. 25-1 at 2 (arrest report); Doc. 25-2 at 2 (domestic-violence report).

[2] Doc. 11 at 2.

1

she "did not even need to go to the emergency room."³ The government opposes his release.⁴ After reviewing the record and law de novo, I deny Cooper's motion based on the substantial risk of danger his release would create.

### Discussion

District-court review of a magistrate judge's detention order is performed de novo.⁵ "The district court is not required to start over in every case, and proceed as if the magistrate's decision and findings did not exist."⁶ Instead, "[i]t should review the evidence before the magistrate and make its own independent determination whether the magistrate's findings are correct, with no deference."⁷

Title 18 U.S.C. § 3142(e) requires the court to detain a defendant if "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." The statute requires courts to consider four factors in determining whether to detain or release a defendant: "(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community should the person be released."⁸

---

³ Doc. 24 at 10–11; Doc. 24-1 at 2. Identical versions of this motion currently show as pending at Doc. 22 and Doc. 24, so this order resolves the motion at both docket numbers.

⁴ Doc. 25.

⁵ *United States v. Koenig*, 912 F.2d 1190, 1192–93 (9th Cir. 1990).

⁶ *Id.* at 1193.

⁷ *Id.*

⁸ *United States v. Chen*, 820 F.Supp. 1205, 1207 (N.D. Cal. 1992) (quoting 18 U.S.C. § 3142(g)). The defendant's relevant history and characteristics include

> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

2

**A.     Risk of Flight**

Cooper first argues that he does not present a risk of nonappearance because he has lived in the Las Vegas area nearly his whole life, all his family lives here, his mother and others are willing to act as third-party custodians and to interview with pretrial services, he owns a trucking company and needs to earn money for payments on his $70,000 semi-truck, and the three failures to appear ("FTAs") listed on his pretrial-services report occurred 10 to 30 years ago.[9]  The government disagrees based on Cooper's multiple FTAs, and it argues that Magistrate Judge Koppe did not clearly rule on whether Cooper poses a risk of flight.[10]  Magistrate Judge Koppe's order does not directly discuss this prong of the detention test, but instead rules based on a danger-to-the-community finding.[11]

Cooper's criminal history is a long record of arrests, pleas, and convictions for crimes including robbery with a deadly weapon, murder with a deadly weapon, DUI, possession of and trafficking in controlled substances, domestic-violence battery (at least three times before the alleged battery giving rise to the instant arrest), kidnapping and sexual assault with substantial bodily harm on a victim under 16, and other drug-related charges.[12]  He does not dispute the list of law-enforcement-related incidents that the government provides "but asks the Court to consider that [his] last 'contact' with law enforcement, aside from the underlying incident, was in January of

---

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law . . .  18 U.S.C. § 3142(g)(3)(A)–(B).

[9] See Doc. 24 at 6–7.  Cooper's fiancee has been one of the people willing to act as a third-party custodian, but because of a pending domestic-violence charge, he is not presently requesting that she be appointed.  See Doc. 24 at 6, 6 n.4.  The domestic-violence charge is not in front of me.

[10] See Doc. 25 at 3–4.

[11] See generally Doc. 11.

[12] See Doc. 25 at 4–6.

3

2009."[13]

I am necessarily concerned about the risk of nonappearance when I read that Cooper has sustained 37 arrests, 5 citations, 2 summonses, 6 or 8 felony convictions in 6 cases between 1983 and 2005, 11 parole violations, and 3 FTAs.[14] This is not the record of an individual who, at least historically, respected the law or the community in which he lived. I am cognizant of Cooper's ties with this community: the long time he has lived here, his family members' support and willingness to serve as third-party custodians, his responsibility in owning a trucking company, his financial obligations, and the fact that about five years have passed since Cooper's last contact with law enforcement.[15] Cooper's conduct was apparently improving until this incident. At the same time, his community ties did not previously prevent him from violating parole; failing to appear; or, for an undetermined length of time, allegedly violating the law prohibiting felons from possessing firearms. Because I need not decide this issue to rule on Cooper's motion, I note my concern about Cooper's nonappearance and do not presently enter a conclusion on whether he is reasonably likely to appear.

### B.     Danger to the Community

The second part of the detention test asks whether Cooper's release poses a danger to the community, whether at large or to any person.[16] Cooper argues that substantial time has passed since his last law-enforcement-related incident, the government failed to carry its burden because its argument was overly based on the nature of the charges and weight of the evidence, Magistrate Judge Koppe based her decision on overstatements of Basolo's injuries, and adopting four proposed

---

[13] Doc. 26 at 2 (discussing the government's listing of "every contact Mr. Cooper has had with law enforcement" and saying that he "has never denied that he has several criminal convictions").

[14] Doc. 24 at 7; Doc. 25 at 4–6. My concern remains even though disposition information is not available for every contact Cooper had with the police and courts. *See id.*; *see also* Doc. 26 at 2. Cooper describes his criminal record as containing "six felony convictions for violent and drug-related offenses," while observing that a decade has passed since his last felony conviction. Doc. 24 at 10. Perhaps the discrepancy between Cooper's and the government's descriptions—whether he was sentenced for six or eight felonies—is resolved by the fact that these convictions apparently occurred in six cases.

[15] *See* Doc. 24 at 6–7.

[16] 18 U.S.C. § 3142(g)(4).

4

conditions of confinement will adequately address any potential danger caused by Cooper's release.[17] The government argues that Cooper's extensive criminal history; the language of Basolo's affidavit, which is "consistent with a victim of domestic violence minimizing her attacker's conduct in a subsequent effort to exonerate him"; the fact that Cooper apparently qualifies under 18 U.S.C. § 924(e) as an Armed Career Criminal ("ACC") because he has three or more violent-felony convictions; and the risk to Basolo and her daughter because they are potential witnesses against Cooper are factors that should prevent release.[18]

Magistrate Judge Koppe's detention order finds that Cooper poses a substantial risk of danger based on two factors. First, his criminal history dates back to 1983 and "includes crimes of violence, drug convictions, probation and parole violations, and failures to appear."[19] She notes that she "would be inclined to fashion conditions of release" if Cooper did not have this combination of criminal history and his "recent brutal attack" on Basolo.[20] As it stands, she concludes that "no conditions or combination of conditions . . . would reasonably protect the community."[21]

On independent review, I find that Cooper's extensive criminal history and his attack on Basolo, when combined, prevent his release at this time.[22] In Michelle Basolo's voluntary

---

[17] Doc. 24 at 7–10 (arguing in part that the weight of the evidence is the least important factor under the Ninth Circuit's decisions in *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991) and *Untied States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986)).

[18] Doc. 25 at 4–8. It appears that Basolo's daughter may be a witness because her daughter accompanied her to the hospital, wrote her voluntary statement, and is, according to her new affidavit, the only reason that Basolo even went to the hospital. *See* Doc. 25-2 at 2, Doc. 25-3 at 3, Doc. 24-1 at 2.
Cooper argues that his "status under the Armed Career Criminal Act has not yet been determined by Probation" and that, even if he has ACC status, it is likely that two out of three qualifying convictions are over three decades old. Doc. 26 at 3. Neither party addresses when his most recent qualifying violent conviction occurred.

[19] Doc. 11 at 2.

[20] *Id.*

[21] *Id.*

[22] I incorporate my discussion of Cooper's criminal history, in Part A above, by reference into this analysis.

5

statement, handwritten by her daughter Briana Basolo "due to her injured writing arm," Cooper's fiancee describes a sustained series of attacks.[23]  Cooper first followed her to her nail salon, in public; when they were home, he allegedly told her, "From now one we're gonna start doing things my way."[24]  In response, she said they had "to have a conversation and communicate about [his] anger," to which he responded, "[E]xcuse me?  Do you want to say that to me again?"[25]  Then the beating started.[26]

      Basolo's statement says that Cooper "started kicking me and smacking me and hitting me in the face."[27]  When she tried to escape over a wall, "he tried pulling [her]."[28]  Basolo returned from her escape, apparently to wait for her daughter and thinking that Cooper would leave.[29]  He then "pushed [her] to the ground" where she hit her head, "kicked [her] in the ribs and back," hit her stomach, and "put frozen vegetables on [her] face."[30]  She believed she passed out at one point.[31]  Cooper allegedly "was holding [her] down slapping and hitting [her] face," "taking his pants off and telling [her] to spread her legs," and "wanted to . . . rape [her]."[32]

      Basolo's recent affidavit tells a different story.  Basolo now states that, rather than waiting for her daughter to help her escape,"[Her] injuries were minor. [She] did not even need to go to the emergency room that evening.  [She] went more out of concern for [her] daughter, who was

---

[23] Doc. 25-3 at 1–2.

[24] *Id.* at 1.

[25] *Id.*

[26] *Id.*

[27] *Id.*

[28] *Id.*

[29] *Id.*

[30] *Id.* at 1–2.

[31] *Id.* at 2.

[32] *Id.*

6

concerned because [Basolo] was emotional and upset."[33] She states that her "entire body was examined and X-rayed," showing that she "had no broken or fractured bones."[34] She denies having been strangled.[35] Cooper's arrest report discussed "possible broken or fractured ribs"; the domestic-violence report noted that Basolo said she was strangled and that she appeared to have "popped blood vessels in her right eye and around the eye."[36] According to this new affidavit, Basolo's injuries were limited to a "black eye and lacerations on [her] wrist."[37] Finally, she states that "there have never been any other incidents of domestic violence," "[t]his was an isolated incident," and she has "no fear" of contact with Cooper.[38]

While Cooper argues that Magistrate Judge Koppe based her decision on "overstatements of the severity of the underlying alleged domestic violence," it remains apparent that Cooper battered her so badly that her entirely body needed to examined and x-rayed for potential broken bones, she was unable to write, and she was given a black eye. The exact cause of her lacerations is unclear, but it is also concerning that her wrist was injured during this episode. Even if I give ful lcredance to Basolo's new story, Cooper was undisputedly violent toward Basolo, and her forgiveness does not alter that fact.

This is Cooper's fourth time in custody for domestic-violence battery.[39] He does not seriously dispute that he qualifies as an ACC or that he has at least three violent-felony convictions.[40] And though Cooper argues that significant time has passed since his last brush with

---

[33] Doc. 24-1.

[34] *Id.*

[35] *Id.*

[36] Doc. 25-1 at 4; Doc. 25-2 at 2.

[37] Doc. 24-1 at 2.

[38] *Id.*

[39] *See* Doc. 25 at 5–6.

[40] *See* Doc. 26 at 3.

the law, he is in custody for illegal possession of three firearms—an allegedly recent violation, not an old one. "Domestic violence often escalates in severity over time . . . and the presence of a firearm increases the likelihood that it will escalate to homicide."[41] For all the reasons discussed in this order, I conclude that Cooper poses a danger to the community—and particularly to Basolo—based on his criminal history and his recent conduct. The law requires that he remain detained at this time.

## Conclusion

Accordingly, and with good cause appearing,

It is hereby ORDERED that Charles Edward Cooper Jr.'s Review and Appeal to District Court of Magistrate Court's Detention Order Pursuant to 18 U.S.C. § 3145(B) **[Docs. 22, 24] is DENIED**.

DATED October 10, 2014.

_____
Jennifer A. Dorsey
United States District Judge

---

[41] *United States v. Castleman*, 134 S. Ct. 1405, 1408 (2014) (citations omitted).

8