# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No. 2:14-cr-00228-JAD-CWH |
| vs. | **REPORT AND RECOMMENDATION** |
| CHARLES EDWARD COOPER, JR., | |
| Defendant. | |

This matter is before the Court on Defendant Charles Edward Cooper's ("Cooper") Motion to Suppress Evidence for Fifth Amendment Violations (ECF No. 75), filed on November 3, 2015. The Court also considered the Government's Response (ECF No. 89), filed on December 29, 2015, and Cooper's Reply (ECF No. 93), filed on January 18, 2016. The Court conducted an evidentiary hearing on February 1, 2016. Trial is to begin on March 8, 2016.

## I. FACTUAL BACKGROUND

On July 1, 2014, Cooper was indicted with one count of Possession of a Firearm by a Convicted Felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (Indictment, (ECF No.1).) This is Cooper's second motion to suppress evidence in this matter. The undersigned submitted a Report and Recommendation regarding Cooper's prior motion to suppress evidence (ECF No. 45), which the district judge adopted (ECF No. 58). The parties are familiar with the facts of this case and therefore only the factual background relevant to this motion is summarized.

On May 31, 2014, at approximately 8:30 p.m., Michelle Basolo ("Ms. Basolo") and her boyfriend, Cooper, got into an argument at their shared house, and she was injured. She and her 16-year-old daughter drove to a local hospital for treatment. Las Vegas Metropolitan Police Department ("Metro") Officers Brumaghin and Ralyea met with Ms. Basolo at the local hospital,

and then proceeded to the house where they arrested Cooper, who was sleeping in the backyard. The officers learned that Cooper had a previous felony conviction. Ms. Basalo informed the officers that there was a shotgun located in the house.

The officers arrested Cooper at about midnight.[1] Cooper was handcuffed and moved to a patrol car parked across the street from the house. Cooper was not advised of his *Miranda*[2] rights. Officer Brumaghin asked Cooper what happened, and Cooper indicated that he had argued with Ms. Basolo, but that Ms. Basolo's injuries were caused by another boyfriend. Officer Brumaghin testified that he did not administer *Miranda* warnings, and that it was an error to fail to do so. He explained that in typical domestic violence situations, the participants are not in custody, but this case was different because Cooper was immediately arrested. He also testified that his oversight was not deliberate. Officer Brumaghin testified that he did not ask Cooper any questions regarding firearms in the house. After his brief discussion with Cooper, Officer Brumaghin advised Officer Ralyea of the results of his interview.

Because the incident involved a felon potentially being in possession of a firearm, Detective Rinetti from Metro's Firearm Investigation Unit was summoned to the residence. When he arrived, Detective Rinetti was informed by Officer Ralyea that Cooper was in custody for domestic violence, that the officers believed a firearm was in the residence, and that Cooper had a prior felony conviction. Detective Bien, another firearms detective, arrived at the scene at about 1:30 a.m. He testified that when he arrived on the scene, Detective Rinetti tasked him with interviewing Cooper. Detective Bien received a brief synopsis of the incident, learned from Detective Rinetti that Cooper was a prior felon in custody, and was told that Cooper had not been administered his *Miranda* warnings.

Detective Bien found Cooper handcuffed in the backseat of the patrol car located across the street from the home. Apparently to avoid having his hands directly behind him, and against the

---

[1] The Court has previously determined that there was probable cause to arrest Cooper for domestic violence. (Report and Recommendation (ECF No. 45) at 7.)

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

1   seat, Cooper had turned his body towards the driver's side of the vehicle. Detective Bien began his
2   interview from the passenger side of the vehicle, and asked Cooper whether he should "come
3   around to the other side" of the car. (Interrogation Tr. (ECF No. 75-2) at 3.) Detective Bien
4   testified that he thought it would be more comfortable for Cooper if the interview was conducted
5   from the driver's side, and he allowed Cooper to sit in the backseat but extend his legs outside the
6   car to the pavement below while he conducted the interview.

7   At the beginning of the recorded interview, Cooper complained that his "cuff is killin' me
8   man. It's about to cut my arm off. Ah Ah." *Id*. Detective Bien responded "didn't they just adjust
9   it a minute ago?" *Id*. Cooper replied "I thought they did but God damn." *Id*. During the seven
10  minute interview, Detective Bien advised Cooper of his rights under *Miranda*, and Cooper
11  admitted that he had handled the shotgun that was reportedly in the house. It is this statement that
12  Cooper moves to suppress.

13  Detective Bien testified that he was not aware that Officer Brumaghin had talked to Cooper.
14  Detective Bien told Cooper that he was not investigating the domestic violence case. (*Id*. at 7.)
15  When asked whether he believed that Cooper was in pain during the interview, Detective Bien
16  testified that he realized that he was in pain at the beginning when he complained about the cuffs,
17  but did not believe that he was in pain during the interview, and thought the pain had diminished
18  after the cuffs were adjusted and Cooper was allowed to turn and place his feet and legs outside of
19  the car. He testified that he thought Cooper was evasive about the shotgun. At the end of the
20  interview, Cooper asked if he could stand up, and Detective Bien said he would get a uniformed
21  officer over to the car to allow that to happen, and to adjust the handcuffs. (*Id*. at 13-14.)

22  **II. ANALYSIS**
23  **A.     Cooper's Unwarned Statements to Officer Brumaghin**
24  Cooper argues that his unwarned statements to Officer Brumaghin should be suppressed
25  because he was in custody at the time of his interrogation, but did not receive *Miranda* warnings.
26  The obligation to administer *Miranda* warnings attaches once a person is subject to
27  "custodial interrogation." *Miranda,* 384 U.S. at 445. The term 'interrogation' under *Miranda*
28  refers not only to express questioning, but also to any words or actions on the part of the police

(other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. *Rhode Island. v. Innis*, 446 U.S. 291, 301 (1980).  Here, the parties do not dispute that Cooper was in custody.  Officer Brumaghin's question to Cooper, "what happened," was intended to solicit an incriminating response from Cooper.  Accordingly, Officer Brumaghin was obligated to advise Cooper of his *Miranda* rights, and his failure to do so makes Cooper's statements inadmissible.[3]

### B.   The Voluntariness of Cooper's Statement to Detective Bien[4]

Cooper seeks suppression of his statements made to Detective Bien, arguing that his post-arrest statements were involuntary because he was in physical pain during the interrogation.

The essence of the right against compulsory self-incrimination is "the requirement that the State which proposes to convict and punish an individual produce the evidence against him by the independent labor of its officers, not by the simple, cruel expedient of forcing it from his own lips." *Culombe v. Connecticut*, 367 U.S. 568, 581-2 (1961).  In analyzing whether a statement is involuntary and coerced, the focus is on whether the "defendant's will was overborne by the circumstances surrounding the giving of [the] confession," an inquiry that "takes into consideration the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation." *Dickerson v. United States*, 530 U.S. 428, 434 (2000).  Surrounding circumstances such as the duration and conditions of detention, the manifest attitude of the police toward him, and the suspect's physical and mental state are relevant. *Culombe*, 367 U.S. at 602.  In determining the voluntariness of a confession, there is "no talismanic definition of 'voluntariness,'

---

[3] At the evidentiary hearing, the Government indicated that it did not intend to use the unwarned statements to Officer Brumaghin in its case in chief because they are relevant only to the domestic violence case, which is not charged in the current indictment.  The Government reserved its right to use the statement as impeachment or rebuttal.  Cooper in turn reserved his right to object to any use of the statement.

[4] Cooper had previously moved to suppress these statements because they were taken after he was illegally removed from his house, but the court denied the suppression on that basis. *See* Report and Recommendation (ECF No. 45), adopted by the district judge.  (Order (ECF No. 58).)

4

mechanically applicable to the host of situations where the question has arisen," *Schneckloth v. Bustamonte*, 412 U.S. 218, 224 (1973), because no "single controlling criterion," no single factor, such as length of interrogation, can be dispositive. *Id*. at 226; *see also United States v. Preston*, 751 F.3d 1008, 1016 (9th Cir. 2014) (en banc) (courts consider the totality of the circumstances when evaluating whether statements made in a custodial interrogation were given voluntarily.)

Here, Cooper had been in handcuffs from the time of his arrest at about midnight until 1:30 a.m. when Detective Bien began the interrogation. When he first spoke with Detective Bien, Cooper told him that the cuffs were "killin" him, and "it's about to cut my arm off." For that reason, Detective Bien confirmed that the cuffs had been adjusted "a minute ago," and allowed Cooper to sit in the patrol car with his legs out of the car in a way that diminished the discomfort.

The interview was brief, lasting only about seven minutes, and the questioning was neither extensive nor oppressive. Immediately before the interview, the cuffs were adjusted. As the interviewed progressed, Cooper did not complain or articulate any further discomfort, except that at the end of the interview, he asked to stand up. Upon review of the recording of the interview, it appears to the Court that Cooper intelligently answered questions in a calm, relaxed tone of voice, and he was not reluctant to explain his statements. These factors indicate that Cooper was not in significant pain during the interview.

Contrary to Cooper's argument, there is no evidence indicating that Detective Bien attempted to capitalize on Cooper's discomfort or physically or mentally manipulate him to provide an incriminatory statement. Detective Bien did not ignore Cooper's initial complaint, but instead acknowledged Cooper's discomfort by asking whether the cuffs had been adjusted, and allowed him to shift his position in the patrol car to alleviate the discomfort. Detective Bien did not condition the removal or adjustments of the handcuffs upon the Cooper's cooperation or responsiveness. The Court finds that Cooper's will to resist Detective Bien's questioning was not overborne by the circumstances surrounding the interrogation, and his statement was therefore not involuntary.

/ / /

/ / /

### C. The Two-Step Process of Interrogation

Cooper seeks suppression of his statements to Detective Bien because they were the result of the unwarned interrogation by Officer Brumaghin. Cooper relies upon *Missouri v. Seibert*, which held that when a police officer makes a conscious decision to interrogate a suspect without providing *Miranda* warnings, and then after obtaining a confession, administers *Miranda* warnings and encourages the suspect to reaffirm his earlier, unwarned statements, the admission of the second set of statements violates *Miranda*. *Missouri v. Seibert*, 542 U.S. 600, 604-606 (2004).

In *Oregon v. Elstad*, police officers obtained a custodial confession from the suspect without *Miranda* warnings, and then later obtained a second confession following proper *Miranda* warnings. 470 U.S. 298, 301-2 (1985). The Court held that the fact that the second statement followed a voluntary, unwarned statement did not preclude the admissions of the second statement, which was given after proper *Miranda* warnings, because the first statement was not the product of coercion. *See id.* at 311-312. The *Elstad* Court held that "absent deliberately coercive or improper tactics in obtaining the initial statement, the mere fact that a suspect has made an unwarned admission does not warrant a presumption of compulsion" with respect to the post-warning confession. *Id*. at 314. The Court thus held that a "suspect who has once responded to unwarned yet uncoercive questioning is not thereby disabled from waiving his rights and confessing after he has been given the requisite *Miranda* warnings." *Id*. at 318. The Ninth Circuit in *United States v. Williams* 435 F.3d 1148, 1153 (9th Cir. 2006) held that *Seibert* required a post-warning confession be suppressed if it was obtained during a "deliberate two-step interrogation where the midstream *Miranda* warning—in light of the objective facts and circumstances—did not effectively apprise the suspect of his rights." *Id*. at 1157. The Court therefore concluded that, in the absence of a deliberate two-step strategy, *Elstad* continues to govern the admissibility of postwarning statements. *Id*. at 1158.

Detective Bien began his interview by advising Cooper of his *Miranda* rights, and there is no challenge to the sufficiency of that *Miranda* warning. Nor does Cooper argue that the prior statement to Officer Burmaghin was coerced in any way, and the Court finds the statement voluntary.

Cooper argues that the officers deliberately employed a two-step interrogation to obtain a confession. Officer Brumaghin testified that his error in failing to warn Cooper was not deliberate. He explained that in typical domestic violence calls, the suspects are not in custody, and so *Miranda* warnings are usually not required.

It does not appear to the Court that Officer Brumaghin deliberately used a two-step interrogation. The interrogation yielded only exculpatory comments from Cooper regarding the domestic violence, and no statements about firearms. Officer Brumaghin did not coordinate his interrogation with anyone – he did not talk with Detective Rinetti or Detective Bien at all. Had he done so, the unwarned information would not have been useful because it did not relate to the firearms investigation. Police therefore obtained no advantage by failing to provide *Miranda* warnings in this situation because during the first statement, no admission was obtained about firearms. *See Seibert,* 542 U.S. at 613 (noting that "the sensible underlying assumption is that with one confession in hand before the warnings, the interrogator can count on getting its duplicate, with trifling additional trouble.") Cooper would have no concern that his prior statements to Officer Brumaghin would be used against him because he did not talk about firearms. For these reasons, the Court finds that Officer Brumaghin did not deliberately withhold *Miranda* warnings in order to employ a two-step interrogation, and *Seibert* does not apply.

Even if Officer Brumaghin deliberately employed the two-step strategy, under *Seibert,* the court must then to evaluate the effectiveness of the midstream *Miranda* warning to determine whether the postwarning statement is admissible. *Seibert*, 542 U.S. at 615. Specifically, the court must decide "whether *Miranda* warnings delivered midstream could be effective enough to accomplish their object." *Williams*, 435 F.3d at 1160 (quotation omitted). Thus, to decide whether the warnings could be effective, the court must address (1) the completeness and detail of the prewarning interrogation, (2) the overlapping content of the two rounds of interrogation, (3) the timing and circumstances of both interrogations, (4) the continuity of police personnel, (5) the extent to which the interrogator's questions treated the second round of interrogation as continuous with the first, and (6) whether any curative measures were taken. *Id*.

/ / /

Officer Brumaghin's interrogation appears to have consisted of just a few questions about what happened. Detective Bien's brief interrogation occurred about one and a half hours after Officer Brumaghin's interview. Officer Brumaghin was not present during the second interrogation. The statements made to Officer Brumaghin and Detective Bien did not overlap, but rather addressed two different issues—the allegation of domestic violence and the possession of the firearm. The statement made to Officer Brumaghin was not incriminatory at all, rather, Cooper denied committing the battery against Ms. Basolo. Detective Bien did not rely upon anything that Cooper said to Officer Brumaghin, rather, he told Cooper during his interview that he was not investigating the domestic violence allegation,[5] thereby making it clear to Cooper that any prior statements were of no consequence. Applying the *Elstad* analysis, the Court finds that after Cooper responded to unwarned yet uncoerced questioning by Officer Brumaghin, he was effectively advised of his *Miranda* rights by Detective Bien, and voluntarily waived those rights. Accordingly, his statements to Detective Bien must not be suppressed.

### III.  RECOMMENDATION

Accordingly, Cooper's statement to Officer Brumaghin must be suppressed, and the statement to Detective Bien must not be suppressed.

**IT IS THEREFORE RECOMMENDED** that Cooper's Motion to Suppress (ECF No. 75) be **GRANTED IN PART AND DENIED IN PART.**

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

---

[5] "Okay, um, as of right now um, you're in custody for battery domestic violence which I have nothing to do with, this is just what the officers are telling me and I'm just passing along that information, okay." (Interrogation Tr. (ECF No. 75-2) at 6.)

**NOTICE**

This Report and Recommendation is submitted to the United States District Judge assigned to this case under 28 U.S.C. § 636(b)(1). A party who objects to this Report and Recommendation may file a written objection supported by points and authorities within fourteen days of being served with this Report and Recommendation. Local Rule IB 3-2(a). Failure to file a timely objection may waive the right to appeal the District Court's Order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

DATED: February 10, 2016.

_____
**C.W. Hoffman, Jr.**
**United States Magistrate Judge**