UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff<br><br>v.<br><br>Charles Edward Cooper, Jr.,<br><br>    Defendant | 2:14-cr-00228-JAD-CWH<br><br>**Order Denying Motion for Arrest of Judgment and Judgment of Acquittal**<br><br>[ECF No. 183] |

On May 25, 2016, a jury found Charles Edward Cooper, Jr. guilty of one count of being a felon in possession of a firearm.[1] Cooper now moves for an arrest of judgment and a judgment of acquittal under Federal Rules of Criminal Procedure 34 and 29.[2] Because Cooper's request for relief fails on its merits and is untimely, his motion is denied.

**Background**

**A.    Cooper's arrest and indictment**[3]

Cooper's charge stemmed from a May 31, 2014, domestic-dispute report between Cooper and his then-live-in girlfriend, M.B. Las Vegas Metropolitan Police ("Metro") officers were dispatched to the couple's shared residence after M.B. and her daughter, B.B. went to a local hospital to seek treatment for M.B.'s injuries. While en route to the hospital, B.B. called 911 and reported both the incident and that there was a shotgun in the master bedroom of the house. Both M.B. and her daughter were interviewed by police at the hospital. M.B. indicated that her injuries were caused by Cooper, that he was passed out in the backyard of their home, and that there was a shotgun in the bedroom; B.B. added that she had witnessed Cooper handle a gun.

---

[1] ECF No. 180.

[2] ECF No. 183.

[3] Most of these facts were developed at trial. Because trial transcripts are not yet available, I relied on my detailed trial notes.

At about 11:30 p.m. that evening, police arrived at the home, a single-family residence with a backyard completely surrounded by a block wall.[4]  Upon arrival, one officer looked over the wall into the backyard and confirmed there was someone sleeping on the back patio.  Another officer then jumped over the block wall and unlatched the gate from the inside, allowing the other officers to enter the backyard.  The officers found Cooper as described, asleep on the back patio; they handcuffed him and placed him in a patrol car across the street for questioning.  M.B. and B.B. soon returned to the home, and M.B. became uncooperative upon observing the restrained Cooper.

Officer Brumaghin was one of the officers who had interviewed M.B. at the hospital, and he returned to the residence and talked to Cooper.[5]  He did not Mirandize Cooper before asking him questions about the domestic-violence allegations.  Firearms detective Bien followed up with Cooper about the firearms allegations.  He administered *Miranda* warnings to Cooper as Cooper sat handcuffed in the police cruiser, and during a seven-minute interview, Cooper admitted that he had handled the shotgun that was in the house.

At about 3:15 a.m., after interviewing Cooper, police froze the house and a Metro firearms detective telephonically applied for and received a warrant to search it.  The transcribed affidavit in support of the search warrant[6] indicated that M.B. told police that there was a shotgun in the couple's bedroom that she had purchased two years ago, described Cooper's history of felony convictions, and stated that Cooper admitted to police that he had touched or manipulated the shotgun.

At trial, M.B. testified that she and B.B. gained entry into the home while it was frozen and officers were awaiting the arrival of firearms detectives to perform the search for firearms.  Under the guise of needing to secure the pet dogs and retrieve feminine-hygiene products from the master bathroom, M.B. gained access to the master bedroom and swiftly grabbed two handguns belonging to Cooper from between the mattresses of their shared bed and stashed them in the linen closet.  M.B.

---

[4] The details in this paragraph about the arrest are taken from the magistrate judge's report and recommendation issued after an evidentiary hearing on Cooper's suppression motion.  ECF No. 45.

[5] These facts are taken from the magistrate judge's report and recommendation prepared after an evidentiary hearing.  ECF No. 96.

[6] ECF No. 28-1.

did not try to conceal the shotgun from the police because she mistakenly believed that Cooper could not get in trouble for it because she was its registered owner.

The officers executed the search warrant and found the handguns in the linen closet and the shotgun leaning up against the wall on Cooper's side of the bed; a box of shotgun ammunition sat on his nightstand. During recorded post-arrest phone calls from jail, Cooper repeatedly tried to convince M.B.—who is not a prohibited person—to go to the police and falsely claim the guns were hers. And, at trial, B.B. tearily testified that she had seen Cooper move one of the handguns from a car before letting her drive it.

Cooper was indicted on one count of being a felon in possession of a firearm.[7]

## B. Pretrial motions

### 1. Cooper's first suppression motion

Cooper, who was then represented by the Federal Public Defender, initially moved to suppress all statements he made incident to Metro's allegedly illegal in-home arrest, arguing that these statements were tainted and must be suppressed and redacted from the search-warrant application.[8] Cooper also argued that the statements obtained from M.B. contained in the warrant application were material misrepresentations that must be excised from the application under *Franks v. Delaware*.

After an evidentiary hearing, Magistrate Judge Hoffman issued an 11-page report and recommendation in which he (1) agreed that Cooper's arrest was unlawful but found that Cooper's post-arrest statements were not tainted by that illegality because the questioning happened outside the home as permitted by *New York v. Harris* and (2) concluded that the search-warrant affidavit did not contain intentionally false or misleading statements.[9] Cooper objected to the magistrate judge's report; I overruled his objections, adopted the magistrate judge's findings and recommendations, and

---

[7] ECF No. 1.

[8] ECF No. 45.

[9] *Id.* (citing *New York v. Harris*, 495 U.S. 14 (1990)).

denied Cooper's motion to suppress.[10]

### 2. Cooper's second suppression motion, decision to represent himself, and other pretrial motions

Cooper, while represented by his second court-appointed attorney, then filed a motion to suppress his post-arrest statements to police, one of which was mirandized; the other was not.[11] After an evidentiary hearing, Magistrate Judge Hoffman issued a report recommending that Cooper's unmirandized statement to Officer Brumaghin be suppressed and that Cooper's mirandized statement to Detective Bien not be suppressed.[12] While that report and recommendation was still pending, Cooper indicated that he wanted to represent himself and he filed a motion to conduct a *Faretta* canvas.[13] On February 18, 2016, the magistrate judge canvassed Cooper, found that he knowingly, intentionally, and unequivocally waived his right to counsel, and dismissed Cooper's lawyer to allow Cooper to represent himself.[14] Cooper then immediately filed a motion to dismiss the indictment for lack of sovereign, personal, or subject-matter jurisdiction and/or Fourth, Tenth, and Fourteenth Amendment violations[15] and a "motion to reconsider hearing to suppress evidence."[16]

On April 12, 2016, I adopted the magistrate judge's report and recommendation on the *Miranda* issues and granted in part and denied in part Cooper's motion to suppress. The net result was that I suppressed Cooper's unmirandized statement to Officer Brumaghin but held that Cooper's mirandized statement to Detective Bien would come in.[17] I also denied Cooper's pro se motion to

---

[10] ECF No. 58.

[11] ECF No. 75 at 3.

[12] ECF No. 96.

[13] ECF No. 97.

[14] ECF Nos. 101 (minutes), 150 (transcript).

[15] ECF No. 102.

[16] ECF No. 103.

[17] ECF No. 126.

dismiss the indictment, rejecting Cooper's selective- and vindictive-prosecution and subject-matter jurisdiction arguments.[18]  Finally, I denied Cooper's motion to reconsider my May 29, 2015, order denying his first suppression motion because it was grossly untimely and he gave me no valid reason to reconsider it.[19]

Standby counsel was appointed,[20] and Cooper proceeded to trial where he represented himself, actively participating in jury selection, examining witnesses, presenting and objecting to evidence, and making opening and closing statements and various oral motions.  He chose not to testify.  The jury found him guilty of the single felon-in-possession charge against him on May 25, 2016.

## C.   Postverdict motions

Cooper argues that he is entitled to an arrest of judgment under Rule 34 because this court lacks jurisdiction over this case due to prosecutorial misconduct and because the indictment charges him only with being a felon in possession of a firearm, not with *constructive* possession of a firearm, which was the government's specific case theory at trial.[21]  He also moves for a judgment of acquittal under Rule 29, arguing that the court erroneously prohibited him from arguing at trial that his arrest and the search of his home were illegal;[22] the evidence was insufficient to support the jury's finding that he possessed a gun "on or about" May 31, 2014, beyond a reasonable doubt;[23] and the court allowed the government to conceal its mishandling of the evidence.

---

[18] *Id.* at 3–5.

[19] *Id.* at 5–6.

[20] ECF No. 110.

[21] ECF No. 183 (emphasis added).

[22] *Id.* at 7.

[23] *Id.* at 8–9.

**Discussion**

**A.  Cooper's motion for arrest of judgment under Federal Rule of Criminal Procedure 34 is denied because it is untimely and without merit.**

Rule 34 requires a court to arrest judgment if it does not have jurisdiction over the charged offense. The rule also states that "[t]he defendant must move to arrest judgment within 14 days after the court accepts a verdict or finding of guilty . . . ."[24] Cooper's guilty verdict was entered on May 25, 2016, and his motion is dated July 10, 2016—two days after the deadline to file it expired, and he has not shown excusable neglect for this delay.[25] Cooper claims in his reply brief that the delay was the result of his mistaken belief that holidays and weekends did not count toward the 14-day filing deadline.[26] But the advisory comments to the rule explicitly state that holidays and weekends *are* included in the 14-day period, and this has been the rule since 2009. Cooper has been repeatedly warned about the perils of self representation and, although he is pro se, he remains responsible for following all court rules and deadlines.[27] I therefore find that Cooper has not shown excusable neglect for his untimely motion, and I deny it as untimely.[28]

In addition to being untimely, Cooper's motion fails on its merits. A court's Rule 34 analysis

---

[24] FED. R. CRIM. P. 34(b).

[25] This is accepting as true the June 10, 2016, hand-written date on Cooper's motion. The court did not receive Cooper's motion until June 16, 2016—six days after it was reportedly dispatched. This gives Cooper twice the time typically allotted to filings under the mailbox rule.

[26] ECF No. 185 at 2.

[27] *United States v. Flewitt*, 874 F.2d 669, 675 (9th Cir. 1989) ("Pro se status does not excuse a criminal defendant from complying with the procedural or substantive rules of the court.").

[28] Under earlier versions of Federal Rules of Criminal Procedure 34 and 29, the time to file the motion was generally held to be jurisdictional, and thus a court was without jurisdiction to consider an untimely motion. *Baker v. United States*, 429 F.2d 1278 (9th Cir. 1970) (holding that district court lacked jurisdiction to entertain untimely Rule 34 motion); *Carlisle v. United States*, 517 U.S. 416 (1996) (holding that district court lacked authority to consider untimely Rule 29 motion). Amendments to the original version of the Rules have extended the time to file these motions from 7 to 14 days. The advisory committee notes for the 2005 Amendments also state that a court may consider an untimely motion if the court determines that the failure to file it on time was the result of excusable neglect.

is limited to the indictment and the verdict and may not consider the evidence offered at trial.[29]  An indictment is generally sufficient if it sets forth the elements of the offense charged in adequate detail to inform the defendant of the charge and enable him to plead double jeopardy.[30]

"To establish a violation of § 922(g)(1), the government must prove three elements beyond a reasonable doubt: (1) that the defendant was a convicted felon; (2) that the defendant was in knowing possession of a firearm; and (3) that the firearm was in or affecting commerce."[31]  Cooper's indictment sufficiently alleges these elements by alleging that Cooper knowingly possessed specified firearms that were in and affecting interstate commerce after having sustained five felony convictions.[32]  Contrary to Cooper's argument, the indictment did not need to allege the *means* for fulfilling those elements, and whether the possession was actual or constructive is simply the means by which the possession element is established.[33]  Cooper's additional argument that this court lacks jurisdiction due to the government's alleged introduction of perjured testimony in front of the grand jury and at trial is not a proper basis for a Rule 34 attack because these are not jurisdictional

---

[29] *United States v. Sisson*, 399 U.S. 267, 281 (1970) (stating that "a judgment can be arrested only on the basis of error appearing on the 'face of the record,' and not on the basis of proof offered at trial.").

[30] *United States v. Award*, 551 F.3d 930, 935 (9th Cir. 2009).  The Ninth Circuit has repeatedly recognized that an "indictment that sets forth the charged offense in the words of the statute itself is generally sufficient." *United States v. Ely*, 142 F.3d 1113, 1120 (9th Cir. 1997) (quoting *United States v. Musacchio,* 968 F.2d 782, 787 (9th Cir. 1992)).  "The test for validity is not whether the indictment could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards." *Ely*, 142 F.3d at 1120 (quoting *United States v. Allender,* 62 F.3d 909, 914 (7th Cir. 1995) (citations omitted)).

[31] *United States v. Beasley*, 346 F.3d 930, 933–34 (9th Cir. 2003).

[32] ECF No. 1.

[33] *See, e.g., United States v. Krouse,* 370 F.3d 965, 966 n.3 (9th Cir. 2004) (noting that possession of a firearm may be either constructive or actual); *United States v. Carrasco*, 257 F.3d 1045, 1049 (9th Cir. 2001) (noting that possession may be actual, constructive, or joint); *see also Coley v. Gonzalez*, 132 F.3d 38 (9th Cir. 1997) (unpublished) (rejecting defendant's claim that indictment was insufficient because it did not inform him that the government would rely on a theory of constructive possession).  At numerous points leading up to trial, the government informed Cooper that it was proceeding on a constructive-possession theory, so he had ample time to prepare his defense from that theory.

arguments and are not limited to the indictment and the verdict.  I therefore deny Cooper's Rule 34 request both because it is untimely and because it lacks merit.

**B.     Cooper's motion for arrest of judgment under Federal Rule of Criminal Procedure 29 is denied because it is untimely and fails on the merits.**

Rule 29 allows a court to overturn a jury's guilty verdict if "the evidence is insufficient to sustain a conviction."[34]  In reviewing the sufficiency of the evidence at trial, courts view the evidence in the light most favorable to the prosecution and ask only whether any rational trier of fact could have found the defendant guilty of each element of the crime beyond a reasonable doubt.[35]  A motion for judgment of acquittal must be made or renewed within 14 days after the jury's verdict.[36]  Like Cooper's Rule 34 request, his Rule 29 request is untimely, and Cooper has not shown excusable neglect for his untimely filing.[37]

Cooper's Rule 29 motion also fails on its merits.  Cooper argues that the government did not carry its burden to prove possession because officers Raylea and Brumaghin testified that Cooper did not have a firearm on his person when he was arrested and that he did not then exhibit behavior indicating that he intended to possess a firearm.[38]  Cooper also argues that the government failed to prove possession because M.B. testified that other individuals had access to the home and because M.B. and her daughter's testimony about observing firearms did not describe events "on or about" May 31, 2014.[39]  Finally, Cooper points out that the government did not present evidence that his DNA or fingerprints tied him to the guns.[40]  Viewing the evidence at trial in the light most favorable

---

[34] FED. R. CRIM. P. 29(a).

[35] *United States v. Heller*, 551 F.3d 1108, 1113 (9th Cir. 2009) (internal citations omitted).

[36] FED. R. CRIM. PROC. 29(c)(1).

[37] *See supra* at p. 6.

[38] ECF No. 183 at 8.

[39] *Id.*

[40] *Id.* at 9.  Cooper's remaining arguments challenge various evidentiary rulings that are not addressable under Rule 29, which considers only the sufficiency of the evidence presented at trial.

to the prosecution, a rational juror could have easily found Cooper guilty of each element of being a felon in possession beyond a reasonable doubt.

### 1. Knowing possession of a firearm

As to the possession element, officers Ralyea and Brumaghin testified at trial that, at the hospital, M.B. reported that there was a shotgun in the master bedroom of the couple's shared home and that M.B.'s daughter indicated that Cooper had previously had a handgun in his car. M.B. testified that she had purchased the shotgun and that she had seen Cooper touch it. Photographs of the bedroom, which M.B. testified were true and correct representations of the state of the home and the position of items in the home at the time of Cooper's arrest, showed the shotgun leaning up against the side of the bed that M.B. and B.B. identified as Cooper's side of the bed. Items on the nightstand on that side of the bed—including a checkbook—further helped identify that side of the bed and the nightstand as Cooper's, and there was also a box of shotgun shells on that nightstand. And during his mirandized discussion with Detective Bien, Cooper admitted he had touched the shotgun and that his DNA would probably be on it.

M.B. also testified that, in late 2013, she discovered the two handguns concealed underneath the couple's mattress and she believed they belonged to Cooper. She confronted Cooper about the handguns, and he did not act surprised, did not disclaim them, and assured her that he would not get into trouble for them despite his felon status. Knowing that the police would likely find the handguns under the mattress during their search, M.B. gained access to the home while it was frozen, grabbed the guns, and stashed them in the linen closet because she did not want Cooper to get in trouble for them. When shown the photo of the handguns in the linen closet, M.B. testified those guns were Coopers. Although M.B. would not admit to the prosecutor on direct examination that she knew how the guns got under the mattress, during cross examination, Cooper asked the proverbial one question too many, and M.B. reluctantly admitted that Cooper had put the handguns under the mattress.

B.B.'s testimony was also damning. She identified the Taurus handgun seized from the linen closet as the gun she had watched Cooper remove from his car. Additionally, the government introduced recordings of jailhouse phone calls at trial in which Cooper and some friends (none of

whom fully appreciated the concept of constructive possession) concocted a plan to have M.B. tell the police that the guns were all hers, and then Cooper and one of those friends (identified as "Jap") tried—without success—to convince M.B. to carry out this ill-conceived plan.  All of this cover-up plan scheming was probative of Cooper's consciousness of guilt and knowing possession of these firearms.  Plus, during these calls, Cooper made statements that he had M.B. purchase the shotgun and that his DNA would probably be on the guns because they were not "wiped."

This evidence amounted to a pile of direct and circumstantial evidence that Cooper had at least constructive possession—knowing ownership, dominion, or control over the home and all three guns found in it—if not actual possession of the guns on or about May 31, 2014,[41] and a reasonable jury could have easily found this element satisfied beyond a reasonable doubt.

### 2. *Felon status*

The evidence at trial was also sufficient for a rational juror to find beyond a reasonable doubt that Cooper was a convicted felon.  The parties stipulated to the fact that Cooper had been previously convicted of a crime punishable by imprisonment for a term exceeding one year.[42]

### 3. *Interstate nexus*

Finally, there was sufficient evidence that all three guns were in or affected interstate commerce.  To satisfy this third element, the government need only prove that the guns crossed state lines at some point in the past.[43]  Agent Cuyler, qualified without objection as an expert in the interstate nexus of firearms, testified that none of the guns seized from Cooper's residence were manufactured in Nevada, so they had to cross state lines to get into Cooper's bedroom.  Sam

---

[41] *See United States v. Thongsy*, 577 F.3d 1036, 1041 (9th Cir. 2009) ("The government can prove actual or constructive possession using circumstantial evidence alone.").

[42] Exhibit 11 (stipulation).

[43] *See, e.g, United States v. Rousseau*, 257 F.3d 925, 933 (9th Cir. 2001) (minimal nexus to interstate commerce satisfied by proof firearm was seized in different state than the one in which it was manufactured); *United States v. Hanna*, 55 F.3d 1456, 1462 (9th Cir. 1995), as amended on denial of reh'g (Aug. 9, 1995) (fact that gun confiscated from the defendant in California had been reported stolen in Nevada was "sufficient to establish a past connection between the gun and interstate commerce.").

Cravotta, the salesman who sold the shotgun to M.B., testified that the shotgun was manufactured in Texas. And Detective Loving testified that he ran a records check on the Taurus that showed that the Taurus was reported stolen out of California in 2009. Based on all of this information, a rational juror could easily conclude that all three guns in this case crossed state lines and thus had a sufficient nexus to interstate commerce.

Because a rational juror could conclude from the evidence presented at trial that Cooper was guilty beyond a reasonable doubt of each element of the offense of being a felon in possession of a firearm, Cooper's Rule 29 motion for judgment of acquittal is denied.

## Conclusion

Accordingly, IT IS HEREBY ORDERED, ADJUDGED, and DECREED that **Cooper's motion for arrest of judgment and judgment of acquittal [ECF No. 183] is DENIED.**

Dated this 29th day of July, 2016.

_____
Jennifer A. Dorsey
United States District Judge