THOMAS L. QUALLS, ESQ.
Nevada State Bar No. 8623
720 Tahoe Street, Suite B
Reno NV 89509
Telephone: (775) 333-6633
Attorney for Petitioner
CHARLES E. COOPER

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>CHARLES E. COOPER,<br><br>　　　　Defendant. | Case No.: 2:14-cr-228-JAD-CWH<br><br>**Reply to Government's Response in Opposition to Defendant's Emergency Motion for Sentence Reduction Pursuant to Title 18 § 3582(c)(1)(A)(i) [ECF No. 264]** |

Defendant, CHARLES E. COOPER, by and through his attorney of record, THOMAS L. QUALLS, ESQ., herein Replies to the Government's Response to his Emergency Motion for Sentence Reduction Pursuant to Title 18 § 3582(C)(1)(A)(i) [ECF No. 264]. Cooper's Emergency Motion is based upon his at-risk health status (Cooper suffers from Asthma, Sleep Apnea, and Heart issues, is age 55, and is an African-American male) in the face of the life-threatening COVID-19 global pandemic.

1

Further failure to release Cooper may amount to violations of the Eighth and Fourteenth Amendments.

## POINTS & AUTHORITIES

According to the Exhibit presented by the Government [ECR No. 266-1], the Bureau of Prisons ("BOP") denied Cooper's administrative request for compassionate release under the threat of fatality due to COVID-19 and Cooper's respiratory high-risk, because he "currently do[es] not meet the criteria based on a detainer with the State of Nevada, Las Vegas Metropolitan Police Department and [his] Pattern risk score is not Minimum." *Id.* The record shows, however, that Cooper has served most of his sentence for the non-violent offense of being an ex-felon in constructive possession of a firearm, under Title 18 § 922(g)(1). Further, he is eligible for release on home confinement anyway, within a matter of months.

Most significantly, given the Government's objections to the lack of medical records, in its answer, the BOP did *not* negate Cooper's assertions that he suffered from medical conditions that put him at high-risk. Nor did the BOP mention anything about his medical condition not being adequate to qualify for release. In the face of this deadly pandemic, BOP's answer is absurd. Cooper is not incarcerated for a violent crime, his release date is January of 2023, and continued incarceration could easily turn his less than three years remaining into a death sentence, which would be utterly senseless and cruel.

The BOP's position is especially reckless when it is considered that courts all over the courts are acknowledging the reality of the dangers of COVID-19 in detention facilities and the uncontroverted evidence, including sworn statements from medical

experts, that it is safer for the entire community if inmates like Cooper, who are at high-risk and who do not pose a threat to others, are released from custody.[1]

Also, the BOP's response to Cooper's request for home release is not in accord with the directives of Attorney General William Barr, who recently directed the Bureau of Prisons "to increase the use of home confinement in a bid to stem the impact of the novel coronavirus on the system." See Matt Zapotosky, Federal Bureau of Prisons will expand use of home confinement amid pandemic, attorney general says, The Washington Post (Mar. 26, 2020).[2] In response, the BOP reported that it "was assessing its population to identify who had already served a substantial portion of

---

[1] *See Xochihua-James v. Barr*, No. 18-71460 (9th Cir. Mar. 23, 2020) (unpublished) (sua sponte releasing detainee from immigration detention "in light of the rapidly escalating public health crisis"); *United States v. Barkman*, 2020 U.S. Dist. LEXIS 45628 (D. Nev. Mar. 17, 2020) (suspending intermittent confinement because "[t]here is a pandemic that poses a direct risk if Mr. Barkman . . . is admitted to the inmate population of the Washoe County Detention Facility"); *United States v Garlock*, 2020 WL 1439980, at *1 (N.D. Cal. Mar. 25, 2020) (citing "chaos" inside federal prisons in *sua sponte* extending time to self-surrender: "[b]y now it almost goes without saying that we should not be adding to the prison population during the COVID-19 pandemic if it can be avoided"); *United States v. Perez*, 2020 WL 1329225, at *1 (S.D.N.Y. Mar. 19, 2020) (releasing defendant due to the "heightened risk of dangerous complications should he contract COVID-19"); *United States v. Stephens*, 2020 WL 1295155, ___F. Supp. 3d___ (S.D.N.Y. Mar. 19, 2020) (releasing defendant in light of "the unprecedented and extraordinarily dangerous nature of the COVID-19 pandemic"); *In re Manrigue*, 2020 WL 1307109 (N.D. Cal. Mar. 19, 2020) ("The risk that this vulnerable person will contract COVID-19 while in jail is a special circumstance that warrants bail."); *In re Request to Commute or Suspend County Jail Sentences*, Docket No. 084230 (N.J. Mar. 22, 2020) (releasing large class of defendants serving time in county jail "in light of the Public Health Emergency" caused by COVID-19); *see also United States v. Matthaei*, 2020 WL 1443227, at *1 (D. Idaho Mar. 16, 2020) (extending self-surrender date by 90 days in light of COVID-19); *United States v. Copeland*, No. 2:05-cr-135-DCN (D.S.C. Mar. 24, 2020) (granting compassionate release to defendant in part due to "Congress's desire for courts to release individuals the age defendant is, with the ailments that defendant has during this current pandemic").

[2] Available at https://www.washingtonpost.com/world/2020/03/26/coronavirus-latest-news/

their sentence, posed no threat and might have preexisting conditions that would make them particularly vulnerable." *Id.* Mr. Cooper arguably meets all of those criteria but nonetheless remains incarcerated. This Court is respectfully requested to remedy this contradiction.

### A.     This Court Has Jurisdiction.

This Court has authority to order his immediate release into home confinement under the compassionate release statute in 18 U.S.C. § 3582(c)(1)(A)(i) as modified by the First Step Act. This statute, first enacted as part of the Crime Control Act of 1984, granted the district court authority to reduce a defendant's term of imprisonment where there were "extraordinary and compelling reasons" warranting such reduction. However, as originally enacted, the statute only gave the court authority grant compassionate release upon a motion by the Director of the BOP. See 18 U.S.C. § 3582(c)(1)(A)(i) (1984).

In 2018, however, Congress enacted the First Step Act, which amended § 3582(c)(1)(A)(i), and gave the Court greater authority. Now, a defendant may file a motion with the court seeking reduction of his sentence for extraordinary and compelling reasons if: 1) the defendant has fully exhausted his administrative remedies; or 2) there has been a lapse of 30 days from the warden's receipt of the defendant's request, whichever is earlier.

It is frankly unclear from the record whether Cooper has exhausted all administrative remedies, specifically, the 30 day holding pattern, as he apparently submitted his request (to be placed in home confinement because of his health and COVID-19) to BOP on March 31, 2020. Nevertheless, this Court should find the

requirements satisfied through Cooper's administrative request and the BOP's rejection of the same.

Alternatively, if the Court does not find them satisfied, it has the authority and ought to waive the exhaustion requirement during this time of emergency. The reality is that any appeal to BOP for administrative assistance in this matter will be futile, 1) given its denial; and 2) pursuing further administrative channels would be dangerously time consuming. Indeed, in the face of this global and deadly pandemic, there is no valid reason to wait 30 days for a formal denial. Waiting for 30 or even 10 more days might prove to be too long. Nothing is going to change between now and then other than that Mr. Cooper will be in greater danger each day as he sits in the communal barracks, uses the communal bathroom, and eats his meals in communal confinement. *See cf.* Sophie Kaplan, *Union votes 'no confidence' in D.C. Jail leaders for handling of COVID-19*, The Washington Times (Mar. 20, 2020) (noting that the "union representing corrections officers at the D.C. Jail unanimously voted 'no confidence' in the jail's leadership for 'guaranteeing and accelerating the rampant spread of COVID-19' after 50 inmates came in contact with a positive case of the coronavirus"). *See* https://www.washingtontimes.com/news/2020/mar/20/union-votes-noconfidence-dc-jail-leaders-handling/.

Courts can dispense with the administrative exhaustion requirement where, as here, there are "exceptional circumstances of peculiar urgency . . . ." *Hendricks v. Zenon*, 993 F.2d 664, 672 (9th Cir. 1993) (*quoting Granberry v. Greer*, 481 U.S. 129, 134 (1987).[3] Indeed, in the compassionate release context, courts have recognized that

---

[3] See also 28 U.S.C. § 2254(b) (authorizing application for writ of habeas corpus in the

5

the exhaustion of administrative remedies can be waived when seeking relief will be futile. *See, e.g., Thody v. Swain*, No. 19-cv-09641, 2019 WL 7842560, *2 (C.D. Cal Nov. 26, 2019) ("A district court may, in its discretion, excuse the failure to exhaust if exhaustion would be futile," but finding the petitioners "conclusory allegations" to be insufficient to establish futility); *Merth v. Puentes*, No.1:19-cv-00251, 2019 WL 3003684, *3 (C.D. Cal July 10, 2019) ("As Respondent did 'not have the authority to grant any provision of the First Step Act without guidance from the Bureau of Prisons' . . . pursuing administrative remedies would have been futile. Accordingly, exhaustion can be waived.").

Cooper has no way to practice "social distancing" or other protective measures that are mandated by health officials throughout the nation and which promise some hope of surviving the consequences of infection. When more inmates get sick, there will be fewer infirmary beds and greater risk of contracting the virus. When the medical staff becomes ill, there will be fewer people to provide care. And when the

---

absence of exhaustion of State remedies where "circumstances exist that render such process ineffective to protect the rights of the applicant."); *Garza v. Davis*, 596 F.3d 1198, 1203-04 (10th Cir. 2010) (recognizing a futility exception to the exhaustion requirement in 28 U.S.C § 2241 where the defendant sought his placement in a lower-security facility such as a community corrections center or a halfway house); *Woodall v. BOP*, 432 F.3d 235, 239 n.2 (3d Cir. 2005) ("[E]xhaustion would be futile, given that Woodall is not challenging the application of the BOP regulations, but their validity."); *Elwood v. Jeter*, 386 F.3d 842, 844 n.1 (8th Cir. 2004) (same); *Boucher v. Lamanna*, 90 F. Supp. 2d 883, 887 (N.D. Ohio 2000) (concluding that exhaustion of administrative remedies would be futile where the BOP's policy on categorizing the prisoner's offense as a violent crime was mandatory, the issue was a legal one that the BOP had consistently defended, and the potential for immediate release counseled timely consideration of the petitioner's case); *Fletcher v. Menard Correctional Center*, 623 F.3d 1171, 1174 (7th Cir. 2010) ("If it takes two weeks to exhaust a complaint that the complainant is in danger of being killed tomorrow, there is no 'possibility of some relief' and so nothing for the prisoner to exhaust.").

correctional staff gets sick, there will be fewer officers available to bring sick people to the infirmary, hospital, or even just keep an eye on who is showing signs of illness. The combination of lack of adequate sanitation, close quarters, and limited medical capacity create the perfect storm. This storm is especially dangerous for people like Mr. Cooper who, because of his age and preexisting respiratory problems, is particularly susceptible to contracting a life threatening illness and being unable to survive it.

### B.     Cooper Is High Risk Under Several Factors.

### 1.  Respiratory Issues.

Cooper reports that he suffers from Asthma & Sleep Apnea, among other conditions. The Government takes issue with Cooper's representation, stating that he has not submitted medical records to show the same. Additionally, the Government relies upon an outdated 2016 PSR and uses the omission of these conditions in the PSR as an argument that they do not exist.

As mentioned, the Government's objection on this issue is not supported by the record, as the BOP did *not* negate Cooper's specific assertions that he suffered from medical conditions that put him at high-risk. Nor did the BOP mention anything about his medical condition not being adequate to qualify for release.

The undersigned does not have Mr. Cooper's medical records in his possession at this time, but has submitted a request to BOP for those records and is awaiting them at the time of this filing. In the meantime, it is requested that this Court grant the motion, conditioned upon affirmative proof of the asserted medical records.

To wait on the records to act in this matter, when the BOP has not negated that his respiratory condition is legitimate, especially in the face of the very real COVID-19 threat, involves a similar folly to waiting for the 30-day administrative window. In addition to the lack of contrary findings by BOP, Mr. Cooper submitted a sworn motion in which he was fairly specific about his condition, including that his tonsils and adenoids have been removed due to the condition, and that he is currently awaiting a CPAP machine. [See ECR 264, pp. 1-2]. Accordingly, it is respectfully asserted that the Government's suspicions are likely unfounded, that the medical records have been requested, Cooper reserves the right to file the supplemental materials when available.

### 2. Cooper is an African American male.

The New York Times reports that statistics to date in New York City show that the coronavirus is twice as deadly for black and Latino persons that it is for whites. https://www.nytimes.com/2020/04/08/nyregion/coronavirus-race-deaths.html. The Times reports that it is worse in other areas of the country, including Chicago, where black people currently account for 72 percent of the coronavirus fatalities in the city, even though they make up only a third of the population. *Id*.

Other cities and states echo this disproportionate rate of fatalities compared to percentage of population, including Milwaukee, WI, Washington, D.C., Louisiana, North Carolina, and Michigan. *See* Reis Thebault , Andrew Ba Tran, Vanessa Williams, "The coronavirus is infecting and killing black Americans at an alarmingly high rate," *The Washington Post*, April 7, 2020.

### C. Cooper Has Served Most of his Sentence on a Non-Violent Offense.

Cooper has served most of his sentence for the non-violent offense of being an ex-felon in constructive possession of a firearm, under Title 18 § 922(g)(1). Further, he is eligible for release on home confinement anyway, within a matter of months. The requested order simply moved that potential date forward a few months, with the good cause of a global pandemic that threatens Cooper's life.

### D. Uncertainty is a Reason to Grant Release, Not Deny It.

Given the circumstances of COVID-19 and the world-wide devastation it is causing, any uncertainty ought to be weighed in favor of Cooper's release on home confinement, not against it. *United States v. Harris*, No. 19-cr-356-RDM, ECF No. 36 (D.D.C. Mar. 27, 2020) ("[W]e do not know with any certainty whether Harris will contract the virus if he remains at the D.C. Jail, and if he does, we do not know whether he will suffer from any severe symptoms. But uncertainty is endemic in the present circumstances, and that uncertainty cannot preclude courts from acting until the damage has been done.").

### E. Unreasonable Risk of Exposure to COVID-19 is Cruel and Unusual Punishment under the Eight Amendment.

The untenable situation that Mr. Cooper faces poses Eighth Amendment and Due Process problems, as well. *See Helling v. McKinney*, 509 U.S. 25 (1993); *Riley v. Rhay*, 407 F.2d 496, 497 (9th Cir. 1969). Should Mr. Cooper not be released from the condition in which he is now living, he is going to be exposed to a life-threatening virus. This is certainly a cruel and unusual punishment that need not be inflicted upon a non-violent, at-risk, non-dangerous, over 50 years of age inmate, who is within

months of eligibility for release.

In *Helling*, a plaintiff alleged that he was assigned to a cell with another inmate who smoked five packs of cigarettes per day. 509 U.S. at 28. At issue was whether this exposure to environmental tobacco smoke (ETS) could constitute a valid claim under the Eighth Amendment, even though the plaintiff had not yet suffered harm. *Id.* at 30. The Supreme Court upheld the decision of the Court of Appeals, finding that the plaintiff stated "a cause of action under the Eighth Amendment by alleging that petitioners have, with deliberate indifference, exposed him to levels of ETS that pose an unreasonable risk of serious damage to his future health." *Id.* at 35.

Though *Helling* directly addressed an inmate's exposure to [secondhand smoke], it tacitly acknowledged other situations in which environmental factors can pose an unreasonable risk to an inmate's health, including exposure to 'infectious maladies such as hepatitis and venereal disease' caused by overcrowding, unsafe drinking water, and 'toxic or other substances." *Allen v. Kramer*, 2016 U.S. Dist. LEXIS 115024, 2016 WL 4613360, at *7 (E.D. Cal. Aug. 17, 2016) (quoting *Helling*, 509 U.S. at 33, 35.) In *Wallis*, the Ninth Circuit applied *Helling* to exposure to asbestos finding it was "uncontroverted that asbestos poses a serious risk to human health" and the plaintiff "proffered specific evidence showing that the defendants knew of the existence of and dangers posed by asbestos." *Wallis v. Baldwin*, 70 F.3d 1074 (9th Cir. 1995). Helling has also been applied to "contagious diseases caused by overcrowding conditions, *Brown v. Mitchell*, 327 F. Supp. 2d 615, 650 (E.D. Va. July 28, 2004); contaminated water, *Carroll v. DeTella*, 255 F.3d 470, 472 (7th Cir. 2001); compelled use of chemical toilets, *Masonoff v. DuBois*, 899 F. Supp. 782, 797 (D. Mass. Sep. 11,

1995), [and] paint toxins, *Crawford v. Coughlin*, 43 F. Supp. 2d 319, 325 (W.D.N.Y. 1999)." *Allen*, 2016 U.S. Dist. LEXIS 115024, 2016 WL 4613360, at *8.

Perhaps most applicable to COVID-19 is a number of cases have applied *Helling* to the exposure of inmates to the lung ailment Valley Fever in California. Relying on *Helling*, *Allen v. Kramer* concluded that an inmate plaintiff had alleged an Eighth Amendment violation because he was housed in the Central Valley where there was a relatively high risk of contracting Valley Fever. *See Allen*, 2016 U.S. Dist. LEXIS 115024, 2016 WL 4613360, at *1, 11. *Shabazz* adopted *Allen*'s reasoning and came to the same conclusion. *Shabazz v. Beard*, 2018 U.S. Dist. LEXIS 31785, 2018 WL 1071173, at *7-9 (E.D. Cal. Feb. 27, 2018); *see also Jackson v. California,* 2014 U.S. Dist. LEXIS 22966, at *32-38 (E.D. Cal. Feb. 20, 2014, No. 1:13-cv-01055-LJO-SAB) (overruled on other grounds in *Hines v. Youseff*, 914 F.3d 1218, 1231 (9th Cir. 2019) (explicitly declining to reach Eighth Amendment question but reversing on fact-specific finding of qualified immunity)).

Finally, The BOP's continued confinement of Cooper at Safford FCI, in spite of the risks posed to him by COVID 19 constitutes a violation of his due process rights. As the Ninth Circuit has recognized, "[w]hile it is true that prison medical officials have wide discretion in treating prisoners, it is also well recognized that the failure or refusal to provide medical care may violate the Fourteenth Amendment." *Riley v. Rhay*, 407 F.2d 496, 497 (9th Cir. 1969) (citation omitted).

11

## **CONCLUSION**

For all the reasons set forth herein, Mr. Cooper respectfully requests that this Court order his immediate compassionate release and impose the following release conditions: 1) that Mr. Powell abide by the standard supervised release conditions; 2) that within 72 hours of release, Mr. Cooper contact the U.S. Probation Office by phone for specific reporting instructions; 3) that Mr. Cooper reside at his mother's residence, in Las Vegas, Nevada, to act as her home health care provider, and to be confined to said home—except when attending medical appointments or other activities approved by the U.S. Probation Office—until his ultimate release date.

RESPECTFULLY SUBMITTED this __23rd__ day of April, 2020.

/s/ Thomas L. Qualls      .
THOMAS L. QUALLS, ESQ.
Attorney for Defendant,
CHARLES E. COOPER

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court of Nevada by using the CM/ECF system on April 23, 2020.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ Thomas L. Qualls
THOMAS L. QUALLS, ESQ.
Attorney for Defendant,
CHARLES E. COOPER