**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| United States of America, | Case No.: 2:14-cr-00228-JAD-CWH |
| Plaintiff | |
| v. | **Order Denying Emergency Motion for Sentence Reduction under 18 U.S.C. 3582(c)(1)(A)(i)** |
| Charles Edward Cooper, Jr., | [ECF No. 264] |
| Defendant | |

Charles Edward Cooper, Jr. has served roughly six years of his ten-year federal prison sentence for a felon-in-possession-of-a-firearm conviction.[1]  He now moves for a compassionate release, arguing that his health conditions put him at greater risk of complications should the COVID-19 virus infiltrate FCI Safford where he is serving his sentence.[2]  Though I am deeply sympathetic to Cooper's situation, I deny his motion because he has not exhausted the Bureau of Prisons' (BOP) process for seeking this relief and the record fails to establish extraordinary and compelling reasons for his early release.

## Background

Cooper is serving a ten-year sentence for being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).[3]  The evidence at his jury trial established that Cooper's firearm possession came to the attention of law enforcement when his girlfriend went to the hospital after he beat her up.  The Ninth Circuit affirmed his judgment of conviction.[4]

---

[1] ECF No. 225 (judgment).

[2] ECF No. 111.

[3] ECF No. 225.

[4] ECF No. 255.

Cooper had an extensive and violent criminal history before this conviction, giving him a criminal history score of 21 and putting him well into the highest criminal history category.  As I summarized when imposing the statutory maximum sentence:

> I think it's impossible to overlook Mr. Cooper's extensive, lengthy, and violent criminal history from the age of 16.  This is his ninth felony conviction; he has another 17 misdemeanor convictions.  He has a rich history of violence against women and children and drug trafficking and various parole violations, probation revocations, bench warrants, and contempt findings revealing a total lack of regard for the law or any remorse or acceptance of responsibility for any of that history.  He has empirically established a likelihood of recidivism and a danger to the community.

> And, during recorded conversations at jail, he was flagrantly trying to get [his girlfriend] to take the rap for this conduct, which I think further demonstrates a total disrespect or disregard for the law and the criminal justice system and, even more, a lack of remorse.[5]

53-year-old Cooper is currently housed at the BOP's Federal Correctional Institution in Safford, Arizona and has a projected release date of January 7, 2023.[6]  He claims (without presenting medical records to corroborate that claim) that he suffers from asthma and chronic sleep apnea and is awaiting a CPAP machine.[7]  He states that he "has requested through electronically written requests to his Unit Team and the Warden at F.C.I. Safford a compassionate release due to his compromised immune system and the unforseen [sic] Covid-19 pandemic, to no avail."[8]  Though he does not attach a copy of those requests, the government states that it has confirmed that Cooper submitted his request for either home confinement or

---

[5] ECF No. 229 at 69 (transcript of sentencing hearing).

[6] https://www.bop.gov/inmateloc/ (search for Register Number 49219-048, last visited 4/28/2020).

[7] ECF No. 264 at 1.

[8] *Id*. at 2.

compassionate release on March 31, 2020; the request for home detention was denied, and the warden has not yet acted on the request for home confinement.[9]  Cooper asks to be released to live with his "ailing mother who recently had a stroke" and broke her ribs.[10]  He claims that he is unable to provide self-care at Safford because he can't socially distance.[11]  And he states that "there are at least two confirmed cases of Covid-19 in the town of Safford, AZ.  It is only a matter of time before it is introduced into" the prison.[12]

The government opposes Cooper's pro se motion, arguing that his failure to comply with the statutory exhaustion requirements is fatal to his request and, regardless, he has not shown extraordinary and compelling reasons for compassionate release.[13]  Cooper's counsel filed a reply, asking the court to dispense with the administrative-exhaustion requirement due to the urgency of the situation and arguing that failure to release Cooper is cruel and unusual punishment.[14]

### Discussion

A sentencing court's ability to modify or reduce a sentence once imposed is seriously limited.[15]  The compassionate-release provision of 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act of 2018,[16] is an exception to this limitation.  It allows the sentencing judge to

---

[9] ECF No. 266 at n.1.

[10] ECF No. 264 at 2.

[11] *Id.*

[12] *Id.* at 3.

[13] ECF No. 266.

[14] ECF No. 267.

[15] *See United States v. Penna*, 319 F.3d 509, 511 (9th Cir. 2003) (exploring Federal Rules of Criminal Procedure 35 and 36); 18 U.S.C. § 3582(c).

[16] The First Step Act of 2018, § 603(b), Pub. L. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018).

reduce a sentence based on "extraordinary and compelling reasons" after the defendant has failed to get the BOP to bring such a motion on his behalf.[17]  The court must consider the factors in 18 U.S.C. § 3553(a) "to the extent that they are applicable," and any sentence reduction must be "consistent with applicable policy statements issued by the Sentencing Commission."[18]

**A.    Cooper's failure to exhaust the administrative process for his release request precludes relief.**

The court may entertain an inmate's request for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) only (1) "after [he] has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion" on his behalf or (2) after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."[19]  Cooper represents that he submitted his compassionate-release request to the warden.[20]  The government has confirmed that Cooper did so on March 31, 2020, and that his request for home detention was denied but the warden has not acted on his request for home confinement.[21]  Cooper thus has not shown that he has exhausted the compassionate-release process at the BOP, and the 30-day period has not yet passed.

Cooper's counsel argues in his reply that the court should dispense with this administrative-exhaustion requirement due to the urgency of this pandemic.[22]  In addressing the flood of emergency release motions that the pandemic has prompted, courts are split on the

---

[17] 18 U.S.C. § 3582(c)(1)(A)(i).

[18] *Id.*

[19] *Id.*

[20] ECF No. 264 at 2.

[21] ECF No. 266 at n.1.

[22] ECF No. 267 at 5.

question of whether the exhaustion requirement can be disregarded.[23]  After evaluating the growing body of decisions, I side with those who have concluded that the failure to satisfy this requirement is "a glaring roadblock foreclosing compassionate release . . . ."[24]

Section 3582(c) states that "[t]he court *may not* modify a term of imprisonment once it has been imposed," except under specified conditions.[25]  For a motion brought under § 3582(c)(1)(A)(i), those specified conditions include the exhaustion of administrative remedies or the BOP's inaction for 30 days.[26]  Thus, the exhaustion requirement is imposed by the express language of the statute itself; it is not judicially created.  As the United States Supreme Court explained in *Ross v. Blake*, while "judge-made exhaustion doctrines . . . remain amendable to judge-made exceptions[,] . . . a statutory exhaustion provision stands on different footing.  There Congress sets the rules—and courts have a role in creating exceptions only if Congress wants them to."[27]  Courts may not carve out exceptions that Congress did not provide, even "special circumstances" ones, because "mandatory exhaustion statutes . . . establish mandatory exhaustion regimes, foreclosing judicial discretion."[28]

Because Congress prescribed no special-circumstances exception to § 3582(c)(1)(A)(i)'s exhaustion requirement, *Ross* dictates that this court lacks the power to create one.[29]  Any

---

[23] *See, e.g.*, *U.S. v. Otero*, 2020 WL 1912216, *4 (S.D. Cal. Apr. 20, 2020) (collecting cases).

[24] *U.S. v. Raia*, 954 F.3d 594 (3d Cir., Apr. 2, 2020) (holding that failure to comply with § 3582(c)(1)(A)'s exhaustion requirement barred relief).

[25] 18 U.S.C. § 3582(c) (emphasis added).

[26] 18 U.S.C. § 3582(c)(1)(A).

[27] *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016).

[28] *Id*. at 1856–58.

[29] *See, e.g.*, *Harris v. Harris*, 935 F.3d 670, 676 (9th Cir. 2019) (noting that statutory language must be construed "strictly and narrowly").

argument for creating such an exception is further weakened by the fact that this statutory

provision is itself a special-circumstances exception to the court's inability to modify a sentence.

Plus, it has its own futility exception "baked into its text,"[30] as it permits an inmate to file his

motion after 30 days if the warden hasn't acted.[31]  Given Congress's decision to mandate

exhaustion and specify this singular, express exception, this court cannot apply an unwritten

special-circumstances one to excuse Cooper's failure to exhaust.[32]  Because Cooper did not fully

exhaust the administrative process or wait 30 days before filing this motion, his motion must be

denied for failure to exhaust.

**B.      The record does not contain extraordinary and compelling reasons for
         Cooper's early release.**

Even if Cooper had properly exhausted the administrative process before filing this

motion, I would deny it for the separate and independent reason that the record does not

demonstrate that his compassionate release is warranted.  Although the statute does not define

---

[30] *Ross*, 136 S. Ct. at 1862.

[31] 18 U.S.C. 3582(c)(1)(A).

[32] *See Ross.* at 1856, 1862 (concluding that the Prison Litigation Reform Act's "mandatory language means a court may not excuse a failure to exhaust, even to take [special] circumstances into account").  There are also sound policy reasons to require an inmate to present his COVID-19 compassionate-release request first to the BOP.  The Attorney General has empowered the BOP to transfer "suitable candidates" with COVID-19 risk factors to home confinement. https://www.bop.gov/resources/news/pdfs/20200405_covid- 19_home_confinement.pdf.  The exhaustion doctrine recognizes "that agencies, not the courts, ought to have primary responsibility for the programs that Congress has charged them to administer" and allows the agencies to apply their "special expertise."  *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992), *superseded by statute on other grounds.*  "Because defendant is in BOP custody, the BOP is in a better position to initially determine [his] medical needs, the specific risk of COVID-19 to [him] and the inmates generally at" his facility, "the risk to the public if [he] is released and whether [his] release plan is adequate."  *U.S. v. Read-Forbes*, 2020 WL 1888856, *4 (D. Kan., Apr. 16, 2020).  These concerns are particularly salient here because Cooper's medical conditions are unverified and FCI Safford has no reported COVID-19 cases.

"extraordinary and compelling circumstances," the U.S. Sentencing Commission has identified

four categories of situations that may qualify: serious medical conditions, advanced age, family

circumstances, and a catch-all "other reasons."[33]   Cooper contends that he falls into the medical-

condition category because he is a 53-year-old African-American man with asthma and chronic

sleep apnea, putting him at greater risk should he contract COVID-19.[34]   The Sentencing

Commission finds extraordinary and compelling reasons under the medical category when the

defendant has a physical, mental, functional, or cognitive impairment "that substantially

diminishes" his ability "to provide self-care within the environment of a correctional facility and

from which . . . he is not expected to recover."[35]

Cooper has not demonstrated that his medical situation presents extraordinary and

compelling circumstances for compassionate release because he offers no records to support

these diagnoses, which must have been made after his 2016 sentencing because his presentence

investigation report reflects that he was in good health with no known medical conditions.

Even if Cooper has these conditions, the notion that he would be better protected from the virus

at his elderly mother's home in Nevada, where there have been nearly 5,000 positive-test cases,[36]

than at FCI Stafford is speculation.  Although the COVID-19 pandemic is undeniably grave and

its impacts on every aspect of American life are unprecedented, there are no confirmed cases of

the virus at FCI Stafford, as Cooper acknowledges,[37] and the BOP has implemented a detailed

---

[33] U.S.S.G. 1B1.13, application note 1(A).

[34] ECF No. 264 at 1.

[35] U.S.S.G. 1B1.13, application note 1(A).

[36] https://covidtracking.com/data#state-nv, last visited 4/29/2020.

[37] ECF No. 264.

COVID-19 response plan for federal inmates.[38]  Thus, I cannot conclude that Cooper's health conditions, even in the face of the COVID-19 pandemic, provide extraordinary and compelling reasons for his early release.

A sentence reduction for Cooper is also unwarranted under the § 3553(a) factors.  His 10-year sentence was well justified by his extensive and violent criminal history that includes nine felony and seventeen misdemeanor convictions, violence against women and children, drug trafficking, various parole violations, probation revocations, bench warrants, and contempt findings.[39]  I found—and maintain—that he was and remains a danger to the community based on his empirically established likelihood of recidivism, his disregard for the law and the criminal-justice system, and his lack of remorse.  Cooper's history and characteristics, and the need to promote respect for the law and protect the public from Cooper's crimes all weigh heavily against shaving nearly three years off his custodial sentence.

Finally, Cooper has not presented a constitutional basis to grant this relief.  His counsel argues in reply that, unless he's released, "he is going to be exposed to a life-threatening virus," and that "would certainly be cruel and unusual punishment."[40]  This hyperbole is based on the assertion that the protections from COVID-19 for inmates are generally insufficient and opinions about prison populations and practices generally.[41]  The information that the government has provided specifically about the BOP's COVID-19 plan, procedures, and practices demonstrates that the BOP is taking precautions to protect Cooper and is actively responding to COVID-19

---

[38] https://www.bop.gov/coronavirus/covid19_status.jsp, last visited 4/29/2020.

[39] ECF No. 229 at 69 (transcript of sentencing hearing).

[40] ECF No. 267 at 9.

[41] *See generally id.*

8

challenges as they evolve.  Because he has not shown deliberate indifference to his health or safety,[42] Cooper's constitutional arguments fail.

### Conclusion

IT IS THEREFORE ORDERED that Defendant Charles E. Cooper's Emergency Motion for Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) **[ECF No. 264] is DENIED.**

Dated: April 29, 2020

_____
U.S. District Judge Jennifer A. Dorsey

---

[42] The Eighth Amendment imposes duties on prison officials to take reasonable measures to guarantee the safety of inmates.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  To establish a violation of these duties, a prisoner must demonstrate deliberate indifference to a serious threat to his safety or health.  *Id.* at 834.